UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL L. O.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. C24-5514-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff appeals the denial of his application for Disability Insurance Benefits. He contends the ALJ erred by rejecting all the medical opinions, plaintiff's testimony, and his wife's testimony and then concluding at step two of the sequential evaluation that none of his impairments are severe. Dkt. 9. The Court finds the ALJ did not support the decision with substantial evidence and harmfully misapplied the law. The Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings before a different ALJ under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

Plaintiff is currently 50 years old, has a master's degree, had a career in the Air Force before being honorably discharged, was declared totally and permanently disabled by the Department of Veterans Affairs related 100% to his service as of June 2020, and worked as a

survival equipment repairer and a social services aide counseling service members on domestic violence and sexual assault. Tr. 57, 60–63, 105, 338, 861. In April 2022, he applied for benefits, alleging disability as of March 19, 2021. Tr. 206. His application was denied initially and on reconsideration. Tr. 94–117. The ALJ conducted a telephonic hearing in September 2023 and issued a decision in March 2024. Tr. 22–92. The ALJ determined plaintiff meets the insured status requirements through December 31, 2026, and has not engaged in substantial gainful activity since the alleged onset date of March 19, 2021. Tr. 27–28. The ALJ found plaintiff has a number of medically determinable impairments: status post lumbar spine surgery; lumbar degenerative disc disease; degenerative joint disease; kyphosis; migraines; posttraumatic stress disorder ("PTSD"); major depressive disorder ("MDD"); lipomas; asthma; insomnia; obstructive sleep apnea ("OSA"); allergic rhinitis; gastroesophageal reflux disease ("GERD"); erectile dysfunction; hypertension; vitamin D deficiency; left shoulder pain; and correctable vision loss. The ALJ determined at step two of the sequential evaluation, however, that none of plaintiff's medically impairments qualified, alone or in combination, as "severe." The ALJ determined these medically determinable impairments could not reasonably be expected to produce the alleged symptoms, plaintiff's symptom testimony is not consistent with the record, and plaintiff has no mental limitations in any functional area. Tr. 29, 33–34. The ALJ therefore found plaintiff was not disabled throughout the relevant period. Tr. 37. As the Appeals Council declined review, the ALJ's decision is the Commissioner's final decision. Tr. 8–14.

## DISCUSSION

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R.

§ 404.1502(a). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff has demonstrated the ALJ not only failed to support his decision with substantial evidence but also harmfully misapplied the law. Instead of applying the step two inquiry as a de minimis screening device to dispose of groundless claims, the ALJ rejected undisputed medical and testimonial evidence about plaintiff's medical impairments in favor of an unreasonable interpretation of the record.

At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits" an individual's "ability to do basic work activities." 20 C.F.R. §404.1520(c). In *Smolen*, the Ninth Circuit explained the scope of a step two inquiry:

> Important here, at the step two inquiry, is the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe. See 42 U.S.C. § 423(d)(2)(B) (Supp. III 1991); Social Security Ruling 868 ("SSR 86–8"). *See also* SSR 85–28. Also, he is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity. SSR 88–13; 20 C.F.R. § 404.1529(d)(2) (effective 11/14/91) (adopting SSR 88–13). Finally, the step-two inquiry is a de minimis screening device to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. at 153–54, 107 S.Ct. at 2297–98. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85–28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988) (adopting SSR 85–28).

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 3

*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Thus, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28).

In this case, although the ALJ acknowledged plaintiff suffered from a number of medically determinable impairments, he concluded that none of those impairments, considered singly or in combination, resulted in an impairment on basic work activities, and plaintiff's mental impairments resulted in no limitations to the four broad functional areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. Tr. 28–37. In doing so, the ALJ rejected substantial and undisputed evidence of pain and physical and mental symptoms related to spine surgery, persistent migraines, PTSD, and MDD. Having improperly rejected the consistency of the testimony of plaintiff and his wife regarding his pain and difficulties in focusing, concentrating, and remembering with the medical diagnoses, the ALJ also failed to consider his subjective symptoms in making the severity determination. Furthermore, the ALJ's conclusion of no severe medical impairment or combination of impairments was not supported by clearly established medical evidence. No rational trier of fact applying step two as a de minimis screening device would conclude plaintiff has presented a groundless claim.

**1. The ALJ's Unreasonable Rejection of Medical Evidence**

As the Ninth Circuit noted in *Webb*, "applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb*, 433 F.3d at 687. In this case, the ALJ found

plaintiff lacked a medically severe impairment or combination of impairments despite medical evidence demonstrating back pain related to spinal surgery, knee pain, recurrent migraine headaches, hypertension, and mental limitations related to PTSD and major depressive disorder. That every medical provider on record opined plaintiff suffers from a severe medical impairment or combination of impairments is sufficient to pass the de minimis threshold of step two. The ALJ harmfully erred by ending the sequential evaluation at step two without reference to substantial evidence and by misapplying the law.

      The ALJ rejected the medical opinion of every examining doctor who addressed plaintiff's functional limitations. Tr. 31–35. In February 2023, Dr. Shirley Deem, M.D., examined plaintiff and reviewed records for his complaints of back pain, left-knee pain, left shoulder pain and limitation of motion, and migraine headaches. Tr. 870. Dr. Deem diagnosed possible history of traumatic brain injury with memory loss and cognitive delay; left shoulder impingement; weakness in his lower extremities related to his spinal fusion surgery in 2013; and hypertension. Tr. 873. Dr. Deem assessed functional limitations on standing and walking; sitting; lifting, carrying, pushing, and pulling; posture; manipulation; and the environment. Tr. 873–874. In August 2022, Dr. K.M. Mansfield-Blair, Ph.D., conducted a telehealth video psychological examination of plaintiff that included the review of 2021 treatment records and plaintiff's May 2022 function report. Tr. 852–57. Dr. Mansfield-Blair diagnosed PTSD and persistent depressive disorder, concluding that plaintiff's mental health prognosis was "guarded," and might improve somewhat over the next twelve months with therapy, noting that he would likely benefit from ongoing psychotropic medication compliance. Tr. 856. Dr. Mansfield-Blair assessed plaintiff would functionally have a low to moderate level of difficulty performing detailed and complex tasks; would have a low to moderate level of accepting instruction from supervisors; would have

difficulty maintaining regular attendance and completing a normal workday/work week without interruptions from a psychiatric condition, given his minimal level of mental health treatment; and would have a low to moderate level of difficulty dealing with the usual stress encountered in the workplace. Tr. 857. In February 2023, Dr. Kathleen Mayers, Ph.D., conducted a telehealth video psychological examination of plaintiff that included the review of Dr. Mansfield-Blair's opinion and plaintiff's October 2022 function report. Tr. 860–65. Dr. Mayers diagnosed PTSD, persistent depressive disorder, and an unspecified neurocognitive disorder. Tr. 864. Dr. Mayers described plaintiff's prognosis as "very poor," noted plaintiff would probably be unable to manage his own money due to very limited memory skills, and opined there was no evidence of malingering. Tr. 864–65. Dr. Mayers opined: "He is not able to interact with others in a work situation in my opinion. Of substantial concern is the fact that that there is no diagnosis reflecting his impaired cognitive status, and he is in need of thorough medical evaluation." Tr. 864.

The ALJ also discounted the opinions of the non-examining, reviewing doctors who, though at times assessing less severe functional limitations than the examining doctors, still opined plaintiff had a number of severe impairments. Tr. 32–33, 35–36. In the original disability determination, Dr. Linda Singerman, M.D., opined plaintiff suffered from the following severe physical impairments: disorders of muscle, ligament and fascia; migraine; asthma; and osteoarthrosis and allied disorders. Tr. 96. On reconsideration, Dr. Stanley Saylor, M.D., opined that plaintiff suffered from the severe physical impairments of disorders of the skeletal spine and other and unspecified arthropathies. Tr. 108. In the original disability determination and on reconsideration, Dr. Andrew Forsyth, Ph.D., and Dr. John Wolfe, Ph.D., agreed plaintiff suffered from the severe mental impairments of trauma- and stressor-related disorders and depressive, bipolar and related disorders, as well as other moderate mental impairments; and on

reconsideration, Dr. Wolfe also determined plaintiff suffered from the severe mental impairment of neurocognitive disorders. Tr. 96–97, 108.

The ALJ's reasons for discounting the severity of plaintiff's acknowledged, medically severe impairments or combination of impairments at best addressed plaintiff's residual functional capacity ("RFC"), an inquiry made later in the sequential evaluation, and at worst demonstrated an irrational interpretation of the record. For example, the ALJ opined imaging of plaintiff's back which showed moderate degeneration and no nerve compression do not support Dr. Deem's opinions regarding physical limitations due to pain. Tr. 32. Not only was this an improper, self-created medical opinion, but it is also a conclusion contradicted by the fact that no doctor suggested back pain and related physical restrictions could not be the consequence of spinal fusion surgery and degenerative disc disease. *See Rohan v.* Chater, 98 F.3d 966, 970–71 (9th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Similarly, the ALJ discounted Dr. Deem's opinion by stating treating physicians have recommended plaintiff "engage in more physical activity than this assessment would support." Tr. 32. As support, the ALJ cited "evidence" that renders such a conclusion meaningless: a boilerplate information sheet about hypertension extracted from "Ambulatory Patient Education" that, in addition to advising the patient not to smoke and to avoid fatty foods, recommended the patient get 30 minutes of exercise most days of the week, Tr. 783; and plaintiff's primary care physician noting, during an annual physical examination, "Balanced diet, regular exercise discussed," Tr. 900. The ALJ cited generally to hundreds of pages of treatment notes to conclude because in certain examinations, for example, for COVID-19 or migraines, there was no observation of a shoulder impairment, Dr. Deem's observation of a shoulder limitation should be disregarded. Tr. 32 (citing Tr. 371–628, 717–850, 875–962, 1040–

47). Not only is this an unreasonable interpretation of the medical record, the ALJ's conclusion is also belied by the fact plaintiff's regular medical providers noted as ongoing concerns all of plaintiff's medically determinable impairments, including "Impingement syndrome of left shoulder." *See, e.g.*, Tr. 381. With respect to physical impairments, no doctor on record supported the ALJ's position that plaintiff suffers from no medically severe impairment or combination of impairments.

      The ALJ presumed that all of the examining and reviewing psychologists were wrong about limitations stemming from PTSD and MDD because plaintiff presented well and plaintiff displayed more capability during mental status exams, Tr. 32; that the psychologists, both reviewing and examining, had over-relied upon plaintiff's symptom testimony about, for example, confusion or concentration, because plaintiff was perceived as more capable and showed greater capacities during mental status exams, Tr. 32–33; and that although there were reports and concerns about plaintiff's neurocognitive deficit, because there was no formal diagnosis of it, and there were indications plaintiff had also demonstrated average to above-average cognitive abilities, there must nothing to the concerns, Tr. 33. Again, while the ALJ could address these concerns during an RFC assessment, the ALJ could not cite himself as a medical authority for the conclusion plaintiff suffered from no medically severe impairment or combination of impairments given that even those medical providers who had administered or reviewed the mental status examinations had accepted and found consistent that plaintiff suffered from the severe impairments of PTSD and major depressive disorder. *See* Tr. 96–97, 108, 852–57, 860–65. The ALJ suggested the recognition of a severe mental impairment was undermined by plaintiff's daily activities of helping with simple meal preparation, washing dishes, folding laundry, sweeping, mopping, vacuuming, tending to the garden, and going along to the store. Tr.

32–33. The ALJ failed, however, to cite any authority that suggests a person suffering from PTSD or MDD would be incapable of performing such tasks. As discussed below, the ALJ improperly rejected plaintiff's symptom testimony such that the purported overreliance on plaintiff's testimony by every medical professional to have examined him is not a reasonable ground for declining to recognize a severe impairment. To the extent there was insufficient evidence of a neurocognitive deficit, though both Dr. Mayers and Dr. Wolfe had identified some form of neurocognitive deficit as a medically severe impairment, the ALJ had the affirmative duty to supplement plaintiff's medical record before rejecting the plaintiff's application at step two. *See Webb*, 433 F.3d at 687; *see also* 20 C.F.R. § 417.1517. The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate, or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). No medical provider had rejected a neurocognitive deficit and Dr. Mayers and Dr. Wolfe had suggested a neurocognitive disorder such that the ALJ's conclusion that there was insufficient evidence to formally diagnose it suggests an ambiguity that should be examined rather than dismissed outright.

It was unreasonable and irrational for the ALJ to have concluded that substantial evidence established plaintiff suffered from no severe impairment or combination of impairments despite every professional medical opinion coming to the opposite conclusion.

**2. The ALJ's Unreasonable Rejection of Testimonial Evidence**

The ALJ's rejection of the symptom testimony by plaintiff and by plaintiff's wife was unsupported by substantial evidence and was a misapplication of the law. The ALJ provided neither clear and convincing reasons for rejecting plaintiff's testimony nor germane or supportable reasons for rejecting testimony by plaintiff's wife.

At step two, a claimant satisfies the de minimis standard designed to dispose of groundless claims if his or her testimony is consistent with the medical diagnoses. *See Webb*, 433 F.3d at 688; *Orellana v. Astrue*, 547 F. Supp. 2d 1169, 1174 (E.D. Wash. 2008). "The in-depth credibility findings an ALJ typically makes when assessing a claimant's residual functional capacity are inappropriate at step two, because 'for purposes of a step two finding, where there is no inconsistency between a claimant's complaints and the diagnoses of record from examining and treating doctors, a claim cannot be found "groundless" under the *de minimis* standards of step two.'" *Roth v. Colvin*, 2013 WL 3852884, at *3 (W.D. Wash. July 24, 2013) (quoting *Orellana*). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal citation and quotation marks omitted).

Plaintiff's testimony about his back pain, migraines, and mental impairments was consistent with the opinions of the doctors to have examined him and reviewed the records. The ALJ purported to discredit plaintiff's back pain and migraines by citing checkbox system reviews during treatment for other conditions. Tr. 29–31 (citing Tr. 381, 390, 391, 395–96, 399, 402, 403, 634–35). The ALJ discredited plaintiff's testimony about other physical impairments and PTSD by stating these conditions were "stable and/or controlled with medication," and his daily activities suggested a greater functionality. Tr. 30. These cherry-picked citations do not undermine the consistency of plaintiff's testimony with the diagnoses of physical and mental impairments. First, the cited records do not imply the treating physicians' dismissal of plaintiff's physical and mental impairments. For example, when plaintiff was being seen for a scheduled biopsy of a skin lesion, though the checkbox "Review of Systems" did not call out

musculoskeletal, neurologic, or psychiatric issues, Tr. 390, the physician noted plaintiff had the "ongoing" problems of lumbosacral strain, meniscal tear of knee, migraines, and PTSD, Tr. 388. Moreover, at the same visit, the physician took the opportunity to treat plaintiff's migraines by ordering an intramuscular injection, a nasal spray, and oral medication. Tr. 389–90. Second, the ALJ mischaracterized the diagnoses. For example, the ALJ stated plaintiff had no further complaints or treatment for back pain after a July 2022 emergency room visit, at which time, the ALJ concluded, plaintiff's back pain was reported as "acute" and was expected to resolve. Tr. 31 (citing Tr. 885).[1] While it is true that plaintiff went to the emergency room for flare-up of pain that appeared suddenly, the physician noted, "**Diagnosis:** 1: Acute low back pain; 2: Chronic low back pain." Tr. 884 (emphasis in original). Moreover, one need look no further than Dr. Deem's examination in February 2023 to find observed medical findings of back pain and limited forward flexion of the back that post-dated the emergency room visit. Tr. 872–73. Third, although the ALJ suggested plaintiff's mental impairments were well-controlled with medication and were belied by his daily activities, neither the fact plaintiff has been prescribed medication for PTSD for years nor any of his daily activities contradict the undisputed medical opinions concluding that plaintiff suffers from the severe mental impairments of PTSD and MDD. In an April 2018 VA PTSD evaluation, Dr. Pamela J. Hall, Ph.D., diagnosed plaintiff with PTSD "directly related to the claimant's exposure to hostile military activity while combat deployed, inducing fear of death and injury in the claimant that continues to this day." Tr. 994. The ALJ cited nothing in the record that would suggest that that any of the symptoms of PTSD have subsided to the point that his medically determinable impairments are no longer severe. Put

---

[1] As plaintiff notes, Dkt. 9, at 15, the ALJ supported the diagnosis of only "acute" pain by referring to an educational handout given to plaintiff on discharge from the emergency room. *See* Tr. 31 (citing Tr. 885).

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 11

simply, the ALJ appeared to conclude *sua sponte* that plaintiff is malingering, though nothing in the record indicates that this is so. *See* Tr. 864–65. Dr. Hall noted plaintiff's insomnia was a symptom of PTSD, Tr. 991, and the treatment record shows that plaintiff continues to be treated and medicated for PTSD and for insomnia, *see, e.g.*, Tr. 878, 880 (July 2022 notes acknowledging ongoing problem of PTSD and poor sleep pattern and that current medications included duloxetine [commonly prescribed for anxiety and PTSD], as well as trazadone as needed for sleep).

The Ninth Circuit has not yet clarified whether an ALJ is still required to provide "germane reasons" for discounting lay witness testimony such as the testimony by plaintiff's wife. *See, e.g.*, *Muntz v. Kijakazi*, 2022 WL 17484332, at *2 (9th Cir. Dec. 7, 2022); *Weitman v. Kijakazi*, 2022 WL 17175060, at *4 n.4 (9th Cir. Nov. 23, 2022); *but see Fryer v. Kijakazi*, 2022 WL 17958630, at *3 (9th Cir. Dec. 27, 2022); *Kennedy v. O'Malley*, 2024 WL 242992, at *2 (9th Cir. 2024). Despite this, other relevant regulations indicate an ALJ must consider evidence from nonmedical sources when evaluating a claim of disability, which includes observations made by a claimant's family, neighbors, friends, or other persons. *See, e.g.*, 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(1), 404.1545(a)(3).[2] The ALJ rejected the testimony by plaintiff's wife as "inconsistent with objective medical findings and other reports from the claimant that he could do more than these reported activities." Tr. 36. As discussed earlier, these reasons were not substantial enough to qualify as reasonable, let alone as "germane" or supportable.

---

[2] The notion that an ALJ can disregard relevant lay evidence without reason is inconsistent with the Commissioner's obligation to consider such evidence. The ALJ must provide some rationale to allow the Court to evaluate whether the decision is free of legal error and supported by substantial evidence. See, e.g., *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

### 3. Remand for Further Administrative Proceedings

Although plaintiff contends that this matter should be remanded for an immediate award of benefits, the Court finds that the ALJ ended the sequential evaluation prematurely such that it is not clear that further administrative proceedings would serve no useful purpose, or that the ALJ would be required to find that plaintiff is disabled given conflicting medical opinions regarding RFC. *See Garrison v. Colvin*, 759 F.3d 995, 1019–20 (9th Cir. 2014). Moreover, as plaintiff acknowledges, examining psychologist Dr. Mayers noted the "substantial concern" that "there is no diagnosis reflecting [plaintiff's] impaired cognitive status, and he is in need of thorough medical evaluation." Tr. 864; Dkt. 9, at 19.

The Court remands for further administrative proceedings, including expansion of the record, a new hearing, and a new opinion. The Court directs the ALJ to obtain cognitive testing to assess plaintiff's cognitive abilities, as recommended by Dr. Mayers, pursuant to the ALJ's duty to develop the record. The Court finds that the remand should be to a different ALJ because, in addition to the reversed decision having no rational basis in fact or law, it appears that the ALJ may have made an adverse finding about plaintiff's credibility based on personal opinion even though he acknowledged during the telephonic hearing that his examination of plaintiff was made without having read the record.[3] Tr. 49, 56.

---

[3] For example, this exchange took place:

> ALJ: All right, well what's your best recollection of the year? I mean, people don't usually forget this. I can tell you every base I was assigned at.
>
> ATTY: Judge … respectfully, my client suffered a pretty significant head injury and his recollection of these dates is going to be rough, at best.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 13

# CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** to a different ALJ for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall obtain cognitive testing to assess plaintiff's cognitive abilities, consider any updated or additional medical records and testimony, hold a new hearing, and issue a new decision that reassesses the medical and other evidence, and the testimony of plaintiff and the lay witnesses, beginning at the outset of the sequential evaluation.

The Court finds that plaintiff is entitled to reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), upon proper request to this Court, because the Commissioner's position on this matter was not substantially justified.

DATED this 18th day of December, 2024.

BRIAN A. TSUCHIDA
United States Magistrate Judge

---

ALJ: All right, thanks for letting me know that. You know, like I said, I didn't look at the case.

Tr. 56.